ELLIS, Judge.
This is a suit for compensation by Ellis Trappey against the Lumbermens Mutual Casualty Company who was the insurer of the Trappey Beverage Company of New Iberia, and Lafayette, Louisiana, for $30 per week for 400 weeks with 5'% per annum interest from maturity until paid, and for an additional sum not to exceed $500 for medical and incidental expenses which may have or be incurred, plus 12% for the arbitrary and capricious refusal of the defendant insurance company to continue Trappey’s compensation after 15 weekly payments, and reasonable attorney fees not to exceed 20% of any amount recovered, with an allowance of all credits for compensation and medical payments previously paid and for all costs of this proceeding.
The defendant filed exception of no right or cause of action which was sustained by the district court under the authority of Dezendorf v. National Casualty Co., La.App., 171 So. 160, and Harper v. Ragus, La.App., 62 So.2d 167, in which our brethren of the Second Circuit held that a member of a partnership could not sue for compensation for he could not be both employer and employee at the same time.
The exception of no right or cause of action was considered by the District Court on the allegations of the petition and a stipulation of fact entered into at the time of the argument.
The admitted facts as shown by the stipulation and the allegations of the petition and upon which the District Court based its judgment and upon which this Court must do likewise were that Ellis Trappey, plaintiff herein, had been employed by the Trappey Beverage Company of New Iberia and Lafayette, Louisiana, which was a commercial partnership composed of H. W. Trappey, Bernard Trappey, A. F. Trappey, R. J. Trappey and George Trappey, Jr., as manager and supervisor of its bottling plant in-Lafayette, and some time prior to *184 the accident, injury and resulting disability to his eye on September 20, 1952, the Trappey Beverage Company gave him a y6th interest in the partnership.
Prior to the time that plaintiff entered the partnership the defendant company issued the policy of insurance which, of course, covered him as an employee of the partnership. After the injury compensation was paid by the defendant until it learned that the plaintiff was a member of the partnership which was on or about January 5, 1953.
In the Dezendorf case, supra, the court based its decision upon the New York case of Le Clear v. Smith, 207 App.Div. 71, 202 N.Y.S. 514, 516, and the old English case decided in 1905 of Ellis v. Ellis & Co., 7 W.C.C. 97, 92 L.T. 718. In dealing with the Le Clear case the Court quoted the following:
“ ‘It seems to me that the real question presented is: Was the claimant at the time of his injury an employee? There is little room for doubt but that in certain aspects a copartnership is a legal entity, and it may be regarded as such particularly here, where the effort of the Workmen’s Compensation Law is to cast upon the business of the employer the burden of compensation for injuries growing out of such business. But, though an entity, it had not as such the capacity as an artifice to hire, discharge, and direct its employees. That power rested in the copartners, or in some person authorized by them. As pointed out in Bowne v. S. W. Bowne Co., 221 N.Y. 28, 116 N.E. 364, the claimant should not be considered an employee because he was the corporation. So here we are led to hold that LeQear cannot be regarded as an employee, because he was a member of the partnership.
“ ‘The relationship of LeClear to the firm of Smith & LeClear, upon his admission to the partnership, it seems to me, became that of an employer. The salary of $15- a week which he drew, in addition to one-third of the net profits, was not for the performance of any special work; it was pay for the general work of the co-partnership. That LeClear’s character was that of an employer seems to be quite well established in the law, and there is no case to which I have been referred holding a contrary doctrine. Cooper v. Industrial Accident Comm. of California, 177 Cal. 685, 171 P. 684; Nevills v. Moore Mining Co., 135 Cal. 561, 67 P. 1054; Ellis v. Joseph Ellis & Co., 7 W.C.C. 97; Employers’ Liability Assurance Corp. v. Industrial Accident Comm., 187 Cal. 615, 203 P. 95; Millers’ Indemnity Underwriters v. Patten (Tex.Civ.App.) 238 S.W. 240; Bank of Buffalo v. Thompson, 121 N.Y. (280) 283, 24 N.E. 473; Hartigan v. Casualty Co. of America, 227 N.Y. (175) 179, 124 N.E. 789; Skouitchi v. Chic Cloak & Suit Co., 230 N.Y. 296, 130 N.E. 299, 15 A.L.R. 1285.’ ”
In referring to-the Ellis case, supra, it made the following observation:
“ ‘It is unanswerably argued, I think, in the English case of Ellis v. Ellis & Co., above cited, that an employee cannot be both employee and employer, that the payment of wages is but the adjustment of accounts between partners and the right of compensation depends upon the relationship between the employer and the person whom he employs. If the claimant became by his entrance into the copart-nership an employer he ceased to be an employee. The law in its definitions does not recognize such dual relationship in industrial enterprise. There are only employers and employees, no hermaphrodites. Workmen’s Compensation Law 1914, § 3, subds. 3, 4, as amended by Laws 1917, c. 705.’ ”
Further quoting from the Dezendorf case, supra:
“And in Munter v. Ideal Peerless Laundry, 229 App.Div. 56, 241 N.Y.S., *185 411, 414, the Supreme Court of New York said:
“ ‘It is plain that the Munter brothers were a copartnership or an association and were conducting as such the business of the Ideal Peerless Laundry on March 22.
“ ‘In the Compenstion Law there is no such personality to be found as to constitute at once employer and eiii-ployee. Lyle v. H. R. Lyle Cider & Vinegar Co., 243 N.Y. 257, 153 N.E. 67, 47 A.L.R. 840; Duprea v. Duprea Brothers, 224 App.Div. 673, 229 N.Y.S. 852; Le Clear v. Smith, 207 App.Div. 71, 202 N.Y.S. 514.’ ”
In the Dezendorf case it was held that the plaintiff who was a member of- the partnership could not legally become an employee and was not entitled to recover compensation from either the partnership or its insurer. The Ragus case, supra, followed this case and that appears to be the only two Louisiana cases dealing with the subject. Neither was considered by the Supreme Court nor was a rehearing applied for in either.
The weight of authorities in the United States is in accord with the Le Clear and Ellis cases, however, Oklahoma is one State which represents the minority view. In the case of Ohio Drilling Company v. State Industrial Commission, 86 Okl. 139, 207 P. 314, 317, 25 A.L.R. 367, the Court stated:
“We think that the construction of the Workmens’ Compensation Act [85 O.S.1951 § 1 et seq.] that a member of the partnership, who works for the partnership, and while so engaged is injured, is not an employee within the meaning of the act, is an exceedingly narrow construction of the act”.
This case was cited with approval by a minority of three in a dissenting opinion in a recent Arkansas case of Brinkley Heavy Hauling Co. v. Youngman, 264 S.W.2d 409. The Ohio Drilling Company case, supra, is still the rule in Oklahoma. See Rodgers v. Blair, 201 Okl. 249, 204 P.2d 867.
It would appear that the present rule in Louisiana established in the Dezendorf case, supra, was based upon the doctrine of the common law States which apparently has treated partnerships as aggregations of. individuals, while Louisiana under its civil law has treated partnerships as separate entities.
There can be no question-with regard to Louisiana’s position in its treatment of partnerships. Our Civil Code, Article 2801, stated:
“Partnership is a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties.” LSA-C.C. art. 2801.
Under this Article are cited many cases one of which is Fourth Nat. Bank v. New Orleans & C. R. Co., 1870, 11 Wall. 624, 78 U.S. 624, 20 L.Ed. 82:
“A party coming into the right of a partner comes into nothing more than an interest in the partnership, which cannot be tangible, made available, or be delivered, -but under an account between the partnership and the partner.” '
Again in the case of Brinson v. Monroe Automobile & Supply Co., 1935, 180 La. 1064, 158 So. 558, 96 A.L.R. 1206, it was held:
“ ‘Partnership’ is a civil person, distinct from persons who compose it, having peculiar rights and attributes, and partnership’s personalty does not belong to partners, but to ideal being, which has control thereof, and partners own only residuum.”
In discussing the nature of a partnership the court in Smith v. McMichen, 1848, 3 La.Ann. 319, after quoting C.C.1825, Art. 2772, now this Article, said:
*186 “This definition, for the purpose of our present inquiry, is substantially the same as that found in the Code Napoleon, and that given by Pothier. ■ It accords with the civil law as presented by Domat, who defines partnership to be a covenant by which two or more persons unite in carrying on some commerce, some work, or some other business, that they may share among them all the profit or loss which they may have by the joint stock which they have put into the partnership. He cites the principle of the Roman law — ‘Sicuti lucrum, ita damnum quoque conmune esse oportet.’ And if we look to the common law writers, we find in the general theory a substantial harmony with our own, with the French, and with the Civil law. It is a contract, says Chancellor Kent, of two or more persons to place their money, effects, labor and skill, or some or all of them in lawful commerce or business, and to divide the profit and bear the loss in certain proportions. See Code .Napoleon, art. 1832. Pothier, Contrat de So-ciete, p. 1. Domat, Book I, Title 8, Sec. 1 § I-
“Being, in every jurisprudence with which we are acquainted considered as taking its origin in the contract of the parties, and each partner being bound to respect and to fulfil the contract, it is obvious that no person claiming to hold under any of the parties, after the formation of the partnership can derive any legal right or benefit through a violation of that contract. It is also to be observed that a participation of the profits is of the essence of partnership. But profits are the excess of gain over loss. From these essential characteristics of the contract, as exhibited by the very definition of our Code, and by its other provisions upon this subject, there results a principle which is consecrated by the jurisprudence of centuries, and rests upon authority too high to be questioned. The partnership once formed and put into action, becomes in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person, which has its peculiar rights and attributes. ‘Une personne fictive et morele se-paree des associes. Fictae cujusdam personae vicem obtinet.’ See the authorities cited in Troplong on Part. § 58 & C. Hence, therefore, the partners are not the owners of the partnership property. The ideal being thus recognized by a fiction of law, is the owner; it has a right to control and administer the property, to enable it to fulfil its legal duties and obligations; and the respective parties, who associated themselves for the purposes of participating in the profits which may accrue, are not the owners of the property itself, but of the residuum which may be left from the entire partnership property, after the obligations of the partnership are discharged.
“This distinction between the partnership as an abstract ideal being and the persons who compose it, is illustrated by rules so familiar that it would be an unnecessary waste of time to argue in their defense. Thus the failure of the partnership does not involve the failure of its members: The creditor of a partner, who is at the same time the debtor of the partnership, would not, when sued by the partnership, be permitted to plead the debt due to him by the former in compensation. So a member of the partnership, sued by his individual creditor, could not plead in compensation a debt due by his creditor to the firm. Ward v. Brandt, 11 Mart. [O.S.] 331 (13 Am.Dec. 352). Terran v. De Lastra, 2 La. [324] 326. Pardessus, part. 4, tit. 1, ch. 1, Sec. 3. So it has held in France that the wife’s tacit mortgage does not attach upon real estate belonging to the firm. Dalloz, Hypoth-eque, p. 166.”
Also see the authorities of Note 3 of Article 2801, West’s L.S.A. Civil Code. We cite the following:
*187 “Under Louisiana law, an ordinary commercial partnership and a partnership of acquets or gains superinduced by marriage are similar in many respects, but one difference is that a commercial partnership is a fictitious civil person possessing peculiar rights and attributes, being in contemplation of law a separate legal entity, distinct from the individuals composing it, capable of suing and being sued in the partnership name. Henderson’s Estate v. C. I. R., [5 Cir.] 1946, 155 F.2d 310, 164 A.L.R. 1030.
“A partnership and a corporation are two different and distinct legal entities and the rights and obligations of a partner are not similar to the rights and obligations of a stockholder in a corporation. Monteleone v. Airey, [La.]App.1952, 57 So.2d 257.
******
“Partnership is an entity separate and distinct from individual partners. Atkinson & Co. v. Hibernia Nat. Bank in New Orleans, 1937, 186 La. 1074, 173 So. 768.
“Partnership once formed becomes a being, distinct from persons composing it, and property belongs to it, not partners. Harrington v. Harrington, [La.]App.1934, 151 So. 648, rehearing refused [La.App.], 152 So. 591.
“Partnership is being distinct from persons composing it and civil person with distinct rights and attributes. First Nat. Bank [of Shreveport] v. Davis, [La.]App.1933, 147 So. 93.”
Counsel in his brief states:
“The plaintiff relies on the general theory of partnership as developed in this state up to the time of the Dezendorf decision, mentioned above. Louisiana, in conformity with most civil law jurisdictions has treated partnerships as separate entities rather than as aggregations of individuals, as to the common law states. Commenting on the two theories, F. Hodge O’Neal, in an article in IX Louisiana Law Review, 450, (1949), entitled An Appraisal of the Louisiana Law of Partnership, (Part II), states:
“ ‘Traditionally the common law treated the partnership as an aggregate of individuals. In most respects, the firm was considered nothing more than an “Abbreviation”, occasionally useful to avoid the vexatious enumeration of the names of the individual members. Closely associated with the aggregate concept was the proposition, early laid down by the common law courts, that partners were co-owners of partnership property holding as joint tenants. The law relating to the rights of partners and separate creditors in partnership property became hopelessly confused because of' the great variety of devices used by the courts in an effort to avoid applying certain incidents of joint tenancy to the partnership.’
“Commenting on this approach, the author continues:
“ ‘Businessmen and accountants long had regarded the partnership as a business unit which moves forward to success or failure as an entity separate from the individuals who compose it. This mercantile idea as to the nature of the partnership seemed to offer an escape from the confusion which existed under the aggregate theory and from the undesirable consequences of the common law rule that partners are co-owners of partnership property holding as joint tenants. Many courts in the United States, in some instances aided by legislation, soon gave the partnership, for certain purposes at least, a legal existence in keeping with the mercantile view.’
******
“As to the other theory of partnership, Dean O’Neal says:
“ ‘Most civil law Jurisdictions treat the partnership as an entity with legal relations separate and distinct from those of its individual members.’
“And continues:
*188 “ ‘ * * * it would not have been surprising to find the Louisiana courts' at time borrowing entity ideas and, on other occasions, adopting aggregate theories. Such has not been the fact. Louisiana courts consistently have asserted that the commercial partnership and the ordinary partnership are legal persons.’
******
“For other statements by courts of this state, we quote footnote number 28 from Dean O’Neal’s article, appearing on Page 454, thereof:
“ * “The partnership is distinct from the individuals forming it.” Christen v. Ruhlman, 22 La.Ann. 570, 572 (1870). The “component parts of a firm are distinct beings from the firm, as well as from each other, and their rights and liabilities must be tested and adjudicated accordingly.” Paradise & Bro. v. Gerson, 32 La.Ann. 532, 534 (1880). “The partnership was a distinct personality from the individuals who compose it.” Stothart v. William T. Hardie & Co., 110 La. 696, 701, 34 So. 740, 742, (1903). A partnership is a “legal entity entirely separate and distinct from the persons who compose it, and may have its own creditors and debtors to the same extent as the individual partners.” E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 352, 84 So. 898, 899 (1920). See Also Donohoe Oil & Gas Co. v. Mack-Jourden Co., 144 So. 169, 172 (La.App.1932). The “mere termination of a partnership does not have' the effect, ipso facto, of extinguishing the concern as a legal entity. It remains as such for the purpose of liquidation and until its affairs are completely wound up.” Duvic v. Home Finance Service, 23 So.2d 790, 794, (La.App.1945.)’ ”
There is nothing inherently wrong with the theory advanced by plaintiff. In Michigan and California, in which a ruling similar to that in the Dezendorf. case had been made, the Legislators passed statutes to include within the definition of “employee” an employer who drew a salary payable, whether there were profits or not. Johnson v. Industrial Accident Commission, 1926, 198 Cal. 234, 244 P. 321, and Gallie v. Detroit Auto Accessory Co., 1923, 224 Mich. 703, 195 N.W. 667.
Judge Learned Hand in Re Samuels & Lesser, D.C.S.D.N.Y.1913, 207 F. 195, 198, recognized the “great simplicity” which would result from the adoption of the entity theory of the partnership, when he stated:
“The whole subject of partnership has undoubtedly always been exceedingly confused, simply because our law has failed to recognize that partners are not merely joint debtors. It could be straightened out into great simplicity, and in accordance with business usages and business understanding, if the entity of the firm, though a fiction, were consistently recognized and enforced.”
Based upon the civil law theory as shown to exist in Louisiana by the authorities heretofore cited, we believe that plaintiff’s position is logical and we see no reason why it should not be adopted in preference to the English theory which controlled the Dezendorf and Ragus cases, supra.
We realize the difficulties that might arise in view of the liability of partnerships under our law but they can be worked out as they arise in subsequent cases. In the present case the partnership carried compensation insurance and the suit is directly against the insurance company. If we follow the entity theory of partnerships as long established in Louisiana, then the plaintiff had a cause of action against the partnership even.though the right to exercise it was barred by special law as against the partnership, but under the authority of Palmer v. Edwards, La.App., 155 So. 483,, Id., La.App., 156 So. 781, and Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191, and cases following the rule made therein by our Supreme Court, such a bar would be personal to the partnership. In other words, if there was a cause of action against the partnership or employer there is also a cause and right of action against *189 the insurer under its contract. If the entity theory is allowed to stand partnerships not now having compensation insurers would more than likely seek protection by obtaining it. The point we wish to make is that if the partnership is a legal entity separate and apart from its partners and therefore has a right to enter into a special contract of employment even with one of the partners, if by the nature -of the business, it would place the employee under the protection of the compensation law. Then the future could take care of any difficulty arising as a result of the law.
In the present case, this commercial partnership not only contemplated but, in fact, hired a manager and supervisor in the person of the plaintiff. He was employed in this position prior to becoming a partner and the duties which he performed were not evidently intended by the original partners to be performed by one of them under the general agreement. Such a position as the. plaintiff occupied was' treated by the partnership as separate and apart from the general duties and obligations of the members of the partnership, and when the plaintiff was given a %th interest in this partnership, the very fact that he retained his position and the partnership continued his wages or salary without any change should be sufficient to keep plaintiff in the category of an employee of this partnership under the “entity” theory. We believe, however, that under the “entity” theory if plaintiff had been an original member and the partnership had selected him to fill the position of supervisor and manager he would be considered as an employee of this partnership and entitled to the protection of the compensation law if it covered the business.
For the reasons given the exception of no cause or right of action is hereby overruled and the case remanded to the District Court for further proceedings in accordance with law.